JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, City View Nursing Rehabilitation Center, Inc. ("City View"), appeals from the judgment of the trial court which ordered it to produce certain documents to plaintiff-appellee, Anthony Rinaldi ("Rinaldi"), administrator of the estate of Hilda Lance. We affirm.
 {¶ 2} On October 28, 2003, Rinaldi commenced this action on behalf of the decedent, Hilda Lance, against City View, the facility where Lance resided for many years prior to her untimely death on August 30, 2001. As alleged in Rinaldi's complaint, City View had noted Lance's medical history of dementia, loss of memory, wandering behaviors, the asking of repetitive questions, and exhibition of poor insight into her own health condition. She was confined by City View to the fourth floor of its facility, which housed residents with dementia, impaired memory or impaired cognition. City's View's care plan for Lance identified the need for her to wear a monitoring device ("wanderguard") at all times. Lance had a history of suffering falls at City View's facility and required assistance with daily living functions.
 {¶ 3} As further alleged in the complaint, at about 5:30 p.m. on August 30, 2001, City View's staff lost track of Lance, who had been permitted to wander the facility without supervision or a monitoring device. She was eventually found at the bottom of a stairwell between the third and fourth floors in a pool of blood with fatal head, brain and spinal cord injuries.
 {¶ 4} The complaint further alleged that Lance's next of kin, who lived out of state, were never informed that she had been left unattended and found dead in a stairwell. Approximately two months after Lance's death, on October 31, 2001, Lance's elderly sister, Roberta Johns, learned for the first time, when she received a copy of the final death certificate, that Lance had suffered blunt force trauma to her head with brain and spinal cord injuries as the cause of her death. The heirs did not learn that Lance's death was caused by a fall down a full flight of stairs until September 2003.
 {¶ 5} Rinaldi commenced suit shortly thereafter, asserting claims for negligence, violation of the Nursing Home Bill of Rights as set forth in R.C. Chapter 3721, fraud, and wrongful death. In light of City View's subsequent inexplicable inability to produce Lance's complete medical chart, Rinaldi later filed an amended complaint adding a claim for spoliation of evidence.
 {¶ 6} The trial court subsequently denied City View's motion to dismiss on statute of limitations grounds. Both parties filed motions for summary judgment; the trial court stayed ruling on the motions pending on-going discovery.
 {¶ 7} During the course of discovery, Rinaldi requested that City View identify, via a privilege log, all of the documents that City View had withheld from discovery. After reviewing the privilege log, Rinaldi demanded production of certain of the documents City View had identified as privileged. By agreement of counsel for both parties, City View subsequently submitted its privilege log and the disputed documents to the trial court for an in camera inspection. City View identified items A through E, G and H of the log, respectively, as "Investigation Report-Form," "Investigation Report-Narrative," "Investigation Report Conclusion-Narrative," "Supervisor's Monitor Accident/Incident Report dated August 30, 2001," "Employee Written Incident Statements for August 30, 2001," "Accident/incident Report Resident Fall Investigation Reports," and "Falls Committee Notes: March 1999."
 {¶ 8} In a subsequent journal entry, the trial court ordered City View to produce all of the documents identified in the privilege log to Rinaldi. City View has now appealed from that order.
 {¶ 9} In its first assignment of error, City View argues that the trial court erred in ordering the production of items A through E, G and H of the privilege log,[1] because the documents are incident reports protected by R.C. 2305.253, which provides:
 {¶ 10} "(A) Notwithstanding any contrary provision of section 149.43,1751.21, 2305.24, 2305.25, 2305.251, 2305.252, or 2305.28 of the Revised Code, an incident report or risk management report and the contents of an incident report or risk management report are not subject to discovery in, and are not admissible in evidence in the trial of, a tort action. * * *."
 {¶ 11} In light of City View's reliance on this statute, Rinaldi filed a motion to dismiss City View's appeal for lack of a final appealable order. He argues that because R.C. 2503.253 became effective on April 9, 2003, after Lance died in her fall down the stairs at City View, but before Rinaldi filed suit on her behalf, it does not apply to this case. Rinaldi contends that the "incident report" privilege of R.C. 2905.253 was not established until 20 months after the cause of action in this case accrued and thus cannot apply to this matter. City View responds that R.C. 2305.253 applies to this action because it is a procedural law that went into effect prior to the filing of Rinaldi's complaint.
 {¶ 12} Assuming, without deciding, that R.C. 2305.253 applies to this action and discovery dispute,[2] we find no abuse of discretion in the trial court's order that City View produce the alleged "incident reports."
 {¶ 13} Under Ohio law, it is well established that the trial court is vested with broad discretion when it comes to matters of discovery, and the "standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." Mauzy v. Kelly Svcs., Inc.
(1996), 75 Ohio St.3d 578. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks
(1994), 98 Ohio App.3d 839, 845. A party seeking to overturn the lower court's discovery ruling must demonstrate that the decision was "unreasonable, arbitrary, or unconscionable." See Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 14} R.C. 2305.25(D) defines incident reports as:
 {¶ 15} "A report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, that is prepared by or for the use of a peerreview committee of a health care entity and is within the scope of thefunctions of that committee." (Emphasis added).
 {¶ 16} Further, R.C. 2505.25(E)(1) defines "peer review committee" as:
 {¶ 17} "* * * a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:
 {¶ 18} "(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;
 {¶ 19} "(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions."
 {¶ 20} In its notice of submitting its privileged documents to the trial court for an in camera inspection, City View set forth the history of the discovery dispute regarding the documents and then stated, "Defendant City View has submitted its privilege log and coordinating privileged documents to the court for an in camera inspection and will await this court's ruling." We find this insufficient to demonstrate that the disputed documents were, in fact, incident reports of the type described in and protected by R.C. 2905.253. City View presented no evidence to the trial court indicating that the records were prepared by or for the use of a peer review committee or that the records were within the scope of the functions of that committee. Although the reports are titled "investigation report" or "incident statements," that is insufficient to demonstrate that the reports were incident reports actually prepared for use by City View's peer review committee. City View's notice contained no explanation whatsoever as to how the documents at issue were "incident reports" as defined by the statute. Moreover, contrary to City View's assertion, we find nothing in the record to indicate that appellee's counsel ever stipulated that the disputed records were indeed the requisite type of incident reports.
 {¶ 21} Furthermore, City View presented no evidence to the trial court that it even had a peer review committee that performed any of the functions identified in R.C. 2305.25(E) or would review the documents at issue. Indeed, at oral argument, City View's counsel conceded that she did not know whether City View had a peer review committee, but merely assumed that it did.
 {¶ 22} A party asserting the privilege set forth in R.C. 2905.253 has the burden of establishing that the privilege is applicable. See, e.g.,Waldmann v. Waldmann (1976), 48 Ohio St.2d 176, 178; Svoboda v. ClearChannel Commun., Inc., 156 Ohio App.3d 307, 2004-Ohio-894, at ¶ 19;Perfection Corp. v. Travelers Cas. Sur., 153 Ohio App.3d 28,2003-Ohio-3358, at ¶ 17. City View having failed to adduce any evidence whatsoever to establish the privilege, we cannot find that the trial court abused its discretion in ordering it to produce the documents to Rinaldi.
 {¶ 23} Accordingly, Rinaldi's motion to dismiss is overruled as moot and appellant's first assignment of error is overruled.
 {¶ 24} Our disposition of appellant's first assignment of error renders its other assignment of error moot and, therefore, we need not address it. App.R. 12(A)(1)(c).
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Calabrese, Jr., J., concur.
[1] City View does not dispute the trial court's order as it relates to City View's obligation to produce items F and I through L of the privilege log and, accordingly, has waived any argument regarding the alleged privileged status of those documents.
[2] Although it did not consider the precise issue presented here, inBrzozowski v. Univ. Hospitals Health Systems, Cuyahoga App. No. 85097,2005-Ohio-2628, this court noted that discovery requests made after April 9, 2003, are governed by the April 9, 2003 amendments to R.C. Chapter 2305.25.