[Cite as *Meade v. Mercy Health-Regional Med. Ctr., L.L.C.*, 2019-Ohio-438.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

DUANE MEADE, Administrator of the
Estate of Mattie E. Meade

    Appellee

v.

MERCY HEALTH-REGIONAL
MEDICAL CENTER, LLC, et al.

    Appellants

C.A. No.    18CA011307


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    15CV187572

DECISION AND JOURNAL ENTRY

Dated: February 11, 2019

---

CALLAHAN, Judge.

**{¶1}** Appellants, Mercy Health-Regional Medical Center, LLC, dba Mercy Regional Medical Center, Mercy Health, and Mercy Health Lorain, LLC (collectively "Mercy"), appeal the March 28, 2018 judgment of the Lorain County Common Pleas Court which granted the motion to compel filed by Appellee, Duane Meade, administrator of the estate of Mattie Meade ("Mr. Meade"), and ordered Mercy to respond to Mr. Meade's first set of interrogatories and second set of requests for production of documents. For the reasons set forth below, this Court reverses.

I.

**{¶2}** In September 2015, Mr. Meade filed a complaint alleging medical malpractice, wrongful death, and loss of consortium claims against Mercy and multiple other medical facilities and doctors who are not parties to this appeal. A year later, Mr. Meade filed a second

complaint against Mercy alleging claims of negligent credentialing, wrongful death, and loss of consortium arising from the same facts in the first complaint. The second complaint specifically identified Dr. Alexander Zolli, a defendant in the first complaint, as the medical provider at issue in the negligent credentialing claim.

{¶3} Upon Mr. Meade's motion, the two cases were consolidated. A few months later, the trial court granted motions by Mercy and Dr. Zolli to bifurcate the negligent credentialing claim from the other claims for purposes of trial, but denied their request to stay discovery as to the negligent credentialing claim.

{¶4} After the issuance of this order, the parties proceeded with discovery as to all of the claims. Multiple discovery disputes arose. Among them was a request for an in camera inspection of Dr. Zolli's credentialing file wherein the trial court ruled portions of the file were protected by the peer review privilege. As to Mr. Meade's most recent motion to compel, the trial court found that the peer review privilege did not apply to the second round of discovery requests and ordered Mercy to respond to the interrogatories and request for production of documents. Mercy filed a motion for reconsideration of this discovery order, which was denied.

{¶5} Mercy timely appeals, asserting one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING [MR. MEADE'S] MOTION TO COMPEL DISCOVERY IN ITS MARCH 28, 2018 JUDGMENT ENTRY AS THE INFORMATION SOUGHT BY [MR. MEADE] IS PROTECTED BY THE PEER REVIEW PRIVILEGE AS SET FORTH IN O.R.C. 2305.252.

{¶6} Mercy argues that the trial court incorrectly ordered the disclosure of information from and about Dr. Zolli's credentialing file that had been previously deemed protected by the peer review privilege. This Court agrees.

{¶7} At oral argument, Mercy clarified that it is not challenging the trial court's ruling as to the second set of requests for production of documents. We will limit our review accordingly.

{¶8} The parties disagree as to what the applicable standard of review is in this case. Mercy argues this Court's standard of review is de novo, while Mr. Meade argues it is an abuse of discretion. Generally, the abuse-of-discretion standard is applicable when reviewing discovery orders. *Ward v. Summa Health Sys.*, 184 Ohio App.3d 254, 2009-Ohio-4859, ¶ 11 (9th Dist.), citing *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. However, this Court has recognized that "the Supreme Court of Ohio has concluded that the issue of whether the information sought is confidential and privileged from disclosure is a question of law that should be reviewed de novo." *Ward* at ¶ 11, citing *Schlotterer* at ¶ 13. In this matter, we will review the trial court's decision de novo because the appeal questions the trial court's interpretation and application of R.C. 2305.252. *See Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, ¶ 12 (9th Dist.).

{¶9} The "peer review privilege" originates in R.C. 2305.252 and states in pertinent part:

> Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee.

R.C. 2305.252(A). The statute also sets forth the original source provision:

> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available

only from the original sources and cannot be obtained from the peer review committee's proceedings or records.

*Id.* The peer review statute also excludes certain testimony from those involved with the peer review process:

> No individual who attends a meeting of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof.

*Id.* While these individuals "cannot be asked about [their] testimony before the peer review committee, information [they] provided to the peer review committee, or any opinion [they] formed as a result of the peer review committee's activities[,]" they are permitted to "testify[] as to matters within [their] knowledge[.]" *Id.*

{¶10} R.C. 2305.252(A) "set[s] forth the confidentiality of records and proceedings in the peer review process" and "provides an umbrella of protection to information which is collected and maintained by a peer review committee during a peer review process." *Lowrey v. Fairfield Med. Ctr.*, 5th Dist. Fairfield No. 08 CA 85, 2009-Ohio-4470, ¶ 28. This Court has recognized that while "[t]he purpose of the statute is to protect the integrity of the peer[]review process in order to improve the quality of health care[,] * * * [t]he peer[]review privilege is not a generalized cloak of secrecy over the entire peer[]review process." *Giusti* at ¶ 14.

{¶11} The party asserting the peer review privilege carries the burden of establishing that the privilege is applicable to the information being sought. *Giusti* at ¶ 17. This burden may be satisfied by "(1) submitting the documents in question to the trial court for an in camera inspection, or (2) presenting affidavit or deposition testimony containing the information necessary for the trial court to adjudge whether the privilege attaches." *Bansal v. Mt. Carmel*

*Health Sys., Inc.*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 14. This Court has stated that this privilege is proven by establishing that "'a peer[]review committee existed and that it actually investigated the incident.'" *Ward*, 184 Ohio App.3d 254, 2009-Ohio-4859, at ¶ 17, quoting *Giusti* at ¶ 17. Additionally, the party seeking the privilege is required to show that each of the documents over which it asserts the privilege is a "'record[] within the scope of a peer review committee.'" (Alterations sic.) *Bansal* at ¶ 15, quoting R.C. 2305.252(A). When a party fails to present this evidence, it fails to carry its burden and the peer review privilege does not apply. *See Ward* at ¶ 17; *Giusti* at ¶ 27-28.

{¶12} Mr. Meade argues that Mercy failed to establish its burden that the peer review privilege applied to the first set of interrogatories. Additionally, Mr. Meade asserts that the trial court's prior in camera review and protective order ruling of Dr. Zolli's credentialing file have "nothing to do with the instant discovery dispute on appeal." (Emphasis deleted.) Mercy concedes that it did not submit an affidavit or deposition testimony in support of this burden. Nor did Mercy present documents for an in camera inspection in response to this motion to compel. Instead, Mercy argues that it had previously submitted the credentialing file for an in camera review relative to the motion for protective order and the trial court deemed parts of the credentialing file to be protected by the peer review privilege.[1] Thus, Mercy contends it was unnecessary to present such evidence to reestablish its burden a second time because the trial court, six months earlier, had ordered that these same documents were not to be produced in discovery because of the peer review privilege. This Court agrees.

---

[1] This Court makes no determination as to whether the earlier motion for protective order filed by Dr. Zolli, and joined by Mercy, contained evidence satisfying their burden of establishing that the peer review privilege was applicable to the credentialing file.

**{¶13}** Six months before Mr. Meade propounded the first set of interrogatories to Mercy, Dr. Zolli filed a motion for protective order, a request for in camera inspection, and a privilege log regarding his credentialing file at Mercy. Dr. Zolli asserted multiple bases for the nondisclosure of his credentialing file, including the peer review privilege. Mercy joined Dr. Zolli's motion for protective order and request for in camera inspection. The trial court conducted the in camera inspection of the credentialing file and ordered that portions of the credentialing file were protected from disclosure pursuant to the peer review privilege, while other portions were not protected by the privilege and were to be produced to Mr. Meade. There was no appeal taken from that discovery ruling. Nor were there any modifications to that discovery order.

**{¶14}** While Mr. Meade is accurate in his statement that "[o]nly the information sought in this second round of discovery * * * is at issue in this appeal[,]" the prior protective order governs the second round of discovery because those interrogatories sought information related to Dr. Zolli's credentialing file. Because Mercy was not asserting the peer review privilege as to new documents, but instead as to documents that were already afforded that protection by the trial court in the same case, it was unnecessary for Mercy to present evidence to establish its burden when responding to Mr. Meade's motion to compel. *See Lowrey*, 2009-Ohio-4470, at ¶ 37, 39 (Addressing a waiver argument, the appellate court found there was no reason for a hospital to file an objection regarding plaintiff's attachment of peer review documents to a motion filed under seal because the trial court had previously granted a protective order prohibiting the plaintiff from seeking peer review information and the protective order remained in place.).

{¶15} Despite the existing order of protection for Dr. Zolli's credentialing file, and Mercy's reliance upon the same in answering Mr. Meade's first set of interrogatories, the trial court ordered Mercy to answer the first twelve interrogatories because "the court agree[d] with [Mr. Meade] that the discovery of certain 'credentialing information' relative to the <u>outcome</u> or <u>results</u> of [Mercy's] peer review process d[id] not violate the statute * * * regarding the considerations made by the peer review members *during* the process." (Emphasis sic.) The trial court found the peer review privilege did not apply because the interrogatories sought "'credentialing information' relative to the outcome or results of [Mercy's] peer review process." (Emphasis deleted.) However, contrary to the trial court's ruling, the statute protects not only the information and considerations during the peer review process, but also the outcomes or results of the committee. *See* R.C. 2305.252(A) (prohibiting testimony "as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof.").

{¶16} Mr. Meade's interrogatories asked Mercy to: 1) identify and explain changes and gaps in Dr. Zolli's clinical privileges and changes in his application for surgical privileges; 2) state whether Dr. Zolli was subject to discipline, suspensions, or terminations, and the reason, nature, and date of the action; 3) state whether there were any hearings or appeals regarding Dr. Zolli's clinical privileges, compliance with state and federal laws, and his conduct and patient care, and the basis and date of the hearings; 4) state whether Dr. Zolli was removed from any committees and the reason; and 5) state whether Dr. Zolli violated the attendance requirements.

{¶17} Mercy asserts that these interrogatories "are an obvious attempt to obtain information that was already excluded from production by the trial court." (Emphasis deleted.) Mr. Meade responds that "this second round of discovery seeks new information that was neither requested nor produced in the first round of discovery." In comparing the two sets of discovery,

we find that while there are new questions, there are also questions that overlap both sets of discovery.

{¶18} While the questions are different, Mr. Meade is nonetheless seeking to obtain privileged information from Dr. Zolli's credentialing file through a different discovery mechanism in the second round of discovery. "It is axiomatic that a party cannot do indirectly that which he could not do directly[.]" *See Kalb v. Morehead*, 100 Ohio App.3d 696, 701-702 (4th Dist.1995). Upon the filing of Dr. Zolli's motion for protective order, the trial court conducted an in camera inspection of his credentialing file from Mercy and ordered that Mr. Meade only be permitted to obtain portions of the file because it found the peer review privilege applied to the other portions. A comparison of Dr. Zolli's credentialing file[2] and the trial court's order of protection reveals that Mr. Meade is seeking information that was contained within the portions of the credentialing file to which he was previously denied access.

{¶19} Further, Mr. Meade's position that "these [i]nterrogatories are simply yes or no questions" and that "[s]imply stating whether such action was taken does not amount to revealing the proceedings or record of a peer review committee" is not well-taken. (Emphasis deleted.) Ten of the twelve interrogatories are conditional questions where an affirmative answer requires Mercy to go on to provide the reason for an occurrence and/or the date of the occurrence. While there are two interrogatories that are not conditional questions, these two questions, along with the other ten questions, all require the disclosure of information contained in the peer review proceedings and records which could identify the records before the committee. *See Huntsman v. Aultman Hosp.*, 160 Ohio App.3d 196, 2005-Ohio-1482, ¶ 27 (5th Dist.).

---

[2] Dr. Zolli's credentialing file was filed under seal and included as part of the record in this appeal.

{¶20} Lastly, Mr. Meade argues that the trial court's decision should be affirmed because Mercy and its staff are "outside [sic] sources" of much of the information sought in the interrogatories, and thus the peer review privilege does not apply. It appears that Mr. Meade is arguing for the application of the original source provision found in the peer review statute. On appeal, Mr. Meade suggests that Mercy's department heads, scheduling personnel, website manager, and various staff with whom Dr. Zolli works on a daily basis, in addition to the peer review committee, would have knowledge of the information being requested in the interrogatories, and thus Mercy must answer the interrogatories. *See Large v. Heartland-Lansing of Bridgeport Ohio, LLC*, 7th Dist. Belmont No. 12 BE 7, 2013-Ohio-2877, ¶ 36, 39 (When documents and information are provided by the hospital to the peer review committee, but the documents were not prepared exclusively for the committee and the information is known to hospital staff outside of the peer review forum, such information is not protected by the privilege and must be produced by the hospital in discovery.); *Bansal*, 2009-Ohio-6845, at ¶ 16, fn. 3. While Mr. Meade argued in this motion to compel that Dr. Zolli was an original source under the statute, Mr. Meade did not make any arguments that Mercy was an original source, and he may not raise the issue for the first time on appeal. *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12.

{¶21} In light of the foregoing, the trial court disregarded its prior order of protection as to the peer review portions of Dr. Zolli's credentialing file and incorrectly applied R.C. 2305.252(A) to Mr. Meade's first set of interrogatories. Accordingly, the trial court erred in granting Mr. Meade's motion to compel Mercy to answer interrogatories 1-12. Mercy's assignment of error is sustained.

III.

{¶22}  The sole assignment of error by Mercy Health-Regional Medical Center, LLC, dba Mercy Regional Medical Center, Mercy Health, and Mercy Health Lorain, LLC is sustained. The judgment of the Lorain County Common Pleas Court is reversed, and the cause is remanded for further proceedings.

Judgment reversed<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

RYAN K. RUBIN and LEAH Z. DUGAN, Attorneys at Law, for Appellants.

CHRISTOPHER M. MELLINO, MEGHAN C. LEWALLEN, and CALDER MELLINO, Attorneys at Law, for Appellee.

PAUL W. FLOWERS, Attorney at Law, for Appellee.

LOUIS E. GRUBE, Attorney at Law, for Appellee.