[Cite as *Sexton v. Healthcare Facility Mgt., L.L.C.*, 2022-Ohio-2376.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JAMES SEXTON, AS EXECUTOR OF THE ESTATE OF JOHN DAVID SEXTON | : | |
| | : | |
| | : | Appellate Case No. 29262 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2019-CV-2598 |
| v. | : | |
| | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| HEALTHCARE FACILITY MGMT. LLC, dba COMMUNICARE FAMILY OF COMPANIES, et al. | : | |
| | : | |
| Defendants-Appellants | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of July, 2022.

. . . . . . . . . . .

CRAIG T. MATTHEWS, Atty. Reg. No. 0029215, 320 Regency Ridge Drive, Centerville, Ohio 45459 and DAVID M. DEUTSCH, Atty. Reg. No. 0014397, 130 West Second Street, Suite 310, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

JEFFREY W. VAN WAGNER, Atty. Reg. No. 0021913 and DIANE L. FEIGI, Atty. Reg. No. 0070286, 1300 East Ninth Street, Suite 1950, Cleveland, Ohio 44114
        Attorneys for Defendants-Appellants

. . . . . . . . . . . .

LEWIS, J.

**{¶ 1}** This matter comes before us on an application for reconsideration pursuant to App.R. 26(A) filed by Plaintiff-Appellee James Sexton, as Executor of the Estate of John David Sexton ("Sexton"). In an opinion issued on March 25, 2022, we concluded that the trial court should have granted a motion for protective order filed by Defendants-Appellants Health Care Facility Management LLC ("HCFM") and Summit (Ohio) Leasing Co., LLC d/b/a Wood Glen Alzheimer's Community ("Wood Glen"). *Sexton v. Healthcare Facility Mgt. LLC*, 2d Dist. Montgomery No. 29262, 2022-Ohio-963.

**{¶ 2}** In our March 25th Opinion, we noted that the documents at issue were grouped into the following four categories: 1) skin assessments; 2) incident reports; 3) progress notes and evaluations; and 4) witness statements regarding the allegations of abuse by residents at Wood Glen other than John Sexton. *Id.* at ¶ 14-17. We concluded that the second and fourth categories of documents were protected from discovery by the peer review privilege and that the first and third categories were medical records that were protected from discovery. *Id.* at ¶ 24-27.

**{¶ 3}** Sexton limits his application for reconsideration to the fourth category of documents, the witness statements regarding the allegations of abuse by residents at Wood Glen other than John Sexton. Application for Reconsideration, p. 4. These witness statements are contained in Exhibits B-25 through B-37. Sexton contends that our March 25, 2022 Opinion failed to consider the trial court's finding that the witness statements Sexton sought from HCFM and Wood Glen were not protected under the peer review privilege, because Sexton was seeking those documents from their original source, the defendant entities themselves, not from the peer review committee.

According to Sexton, he intends "to use the requested statements to prove that Wood Glen was negligent in this case. That is, other employees at Wood Glen physically abused other residents and Wood Glen was inadequate in their attempts to remedy the problem." *Id.* at p. 8.

{¶ 4} In our March 25, 2022 Opinion, we concluded the following with regard to the witness statements:

Finally, the witness statements contained in Exhibits B-25 through B-37 are covered by the peer-review privilege. According to Dr. Patel, these documents were part of the investigations of alleged abuse at Wood Glen and the Quality Assurance Committee was required to, and did in fact, meet and review these investigation documents. Therefore, the trial court erred in ordering these documents to be produced.

*Sexton* at ¶ 27.

{¶ 5} The test generally applied to an application for reconsideration is whether it "calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." *Matthews v. Matthews*, 5 Ohio App.3d 140, 143, 450 N.E.2d 278 (10th Dist.1982). "An application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court." *State v. Owens*, 112 Ohio App.3d 334, 336, 678 N.E.2d 956 (11th Dist.1996).

{¶ 6} Although we did note in our Opinion that there is an "original source"

exception to the peer review privilege, we agree with Sexton that we did not conduct a specific analysis regarding the trial court's finding that Sexton was seeking the witness statements from an original source rather than from the peer review committee. Therefore, we will grant Sexton's application for reconsideration in order to address whether the witness statements contained in Exhibits B-25 through B-37 fit within the original source exception to the peer review privilege.

{¶ 7} R.C. 2305.252(A) provides that proceedings and records within the scope of a peer review committee "shall be held in confidence and shall not be subject to discovery * * * in any civil action against a health care entity or health care provider * * * arising out of matters that are the subject of evaluation and review by the peer review committee. * * *" However, R.C. 2305.252(A) goes on to provide the following "original source" exception to this bar on discovery:

> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.

{¶ 8} The trial court referenced this exception in its June 22, 2021 Decision. The trial court stated, in part:

> It is the Court's understanding that plaintiffs are seeking these

records from the defendant entities themselves as produced by persons within the scope of employment with the defendant entities, and not "from the peer review committee's proceedings or records." Therefore, the requested documents fall within the exception.

June 22, 2021 Decision, p. 6.

{¶ 9} As the First District has explained, "[t]here are two general categories of documents that are considered records within the scope of the peer-review committee. First, any documents that are generated by or exclusively for the peer-review committee are protected from disclosure." *Spurgeon v. Mercy Health-Anderson Hosp., LLC*, 2020-Ohio-3099, 155 N.E.3d 103, ¶ 14 (1st Dist.). Second, any documents that are maintained in the peer review committee's records that were generated by an "original source," a source other than the peer review committee itself, and then presented to a peer review committee are protected from disclosure. *Id.* at ¶ 15; R.C. 2305.252.

{¶ 10} But the records and proceedings of the peer review committee are not necessarily coextensive with all the records of the facility in which the committee operates. *Id.* at ¶ 16, citing *Large v. Heartland-Lansing of Bridgeport Ohio, LLC*, 2013-Ohio-2877, 995 N.E.2d 872, ¶ 35 (7th Dist.). "It is possible for the health care entity itself to be an original source." *Spurgeon* at ¶ 16, citing *Cousino v. Mercy St. Vincent Med. Ctr.*, 2018-Ohio-1550, 111 N.E.3d 529, ¶ 28 (6th Dist.) and *Large* at ¶ 35. For example, "[d]ocuments that are accessible to the staff of the facility separate and apart from any role on a review committee are not protected by the privilege." *Spurgeon* at ¶ 16, citing *Large* at ¶ 39.

{¶ 11} The trial court's finding that Sexton was seeking production of the documents from an original source, the defendant entities themselves, necessary implied that the trial court also was finding that the documents were not generated by the committee itself, but rather were generated by another part of the defendant entities that subsequently shared the witness statements with the committee. Appellants take issue with this implication. According to Appellants, the Quality Assurance Committee was the original source of the witness statements, because the "witness statements were prepared for the sole use of the Quality Assurance Committee[.]" Brief in Opposition to Application for Reconsideration, p. 7. But there is nothing in the affidavits of Dr. Meenakshi Patel or John Quattrone to establish that the witness statements contained in Exhibits B-25 through B-37 were prepared for the sole use of the Quality Assurance Committee.

{¶ 12} Paragraph 18 of John Quattrone's October 23, 2020 affidavit states that "[t]he written statements and incident reports were prepared for the use of the Quality Assurance Committee." But this paragraph referred to documents attached to his affidavit that related to the incident involving John Sexton and Vanesha Rice. These particular documents were contained in Exhibits A-3 through A-24. The documents contained in Exhibits B-25 through B-37 were not mentioned in Quattrone's affidavit. Dr. Meenakshi Patel's November 16, 2020 affidavit is the one that specifically addresses the documents contained in Exhibits B-25 through B-37. Dr. Patel's affidavit does not contain a paragraph similar to paragraph 18 of Quattrone's affidavit. Further, unlike the incident reports themselves, the witness statements do not contain a statement at the

bottom of the page that "This document is for internal use only within our quality assurance program."

{¶ 13} We must keep in mind that privileges are to be strictly construed and that the party claiming the privilege has the burden of proving that the privilege applies to the requested information. *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, ¶ 17 (9th Dist.). Appellants did not carry their burden of proving that the witness statements contained in Exhibits B-25 through B-37 were being sought from a peer review committee's records or that the statements were specifically prepared for the use of a peer review committee. Given the trial court's finding that the documents were being sought from an original source that was not a peer review committee, we conclude that the witness statements in Exhibits B-25 through B-37 fit within the original source exception to the peer review privilege. *See Ridenour v. Glenbeigh Hosp.*, 8th Dist. Cuyahoga No. 100550, 2014-Ohio-2063 (analyzing the difference between documents simply shared with a peer review committee versus documents specifically prepared for the committee). But our analysis does not end there.

{¶ 14} The witness statements contained in Exhibits B-25 through B-37 relating to allegations of abuse involving other residents at Wood Glen are grouped in the exhibits with the incident reports associated with those allegations. R.C. 2305.253(A) applies to incident reports and provides:

> Notwithstanding any contrary provision of section 149.43, 1751.21, 2305.24, 2305.25, 2305.251, 2305.252, or 2305.28 of the Revised Code, an incident report or risk management report and the contents of an incident

report or risk management report are not subject to discovery in, and are not admissible in evidence in the trial of, a tort action.   * * *

{¶ 15} R.C. 2305.25(D) defines incident report or risk management report as:

a report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers * * * that is prepared by or for the use of a peer review committee of a health care entity and is within the scope of the functions of that committee.

{¶ 16} Dr. Meenakshi Patel, in her affidavit, stated that "[t]he purpose, in part, of the Quality Assurance Committee is to review investigations of any alleged incidents, including statements taken relative to any alleged incidents and incident reports."  Patel Affidavit, ¶ 8.  She also stated that the Quality Assurance Committee was required to meet to review the alleged incidents contained in Exhibits B-25 through B-37 and that the "Committee complied with the QAPI Policy and reviewed the investigations of the alleged incidents contained in Exhibits B-25 through B-37."  Id. at ¶ 15-16.   However, there is no statement in Dr. Patel's affidavit that can be construed as establishing that the witness statements are actually part of the incident report.   And the definition of incident report in R.C. 2305.25(D) is not broad enough on its own to include these witness statements. Further, as noted above, there is no statement in Dr. Patel's affidavit that the witness statements were prepared by or for the use of the committee.   Consequently, we conclude that the blanket protection from discovery provided to incident reports in R.C. 2305.253 does not apply to the witness statements contained in Exhibits B-25 through B-37.

{¶ 17} Sexton's application for reconsideration is granted. The trial court correctly found that the witness statements in Exhibits B-25 through B-37 were not protected from discovery by the peer review privilege.

{¶ 18} Having granted Sexton's application for reconsideration, the trial court's judgment is affirmed in part and reversed in part, for the reasons set forth in this opinion and our March 25, 2022 opinion. The cause will be remanded for further proceedings consistent with this opinion and our prior opinion.

. . . . . . . . . . . .

TUCKER, P.J. & EPLEY, J., concur.

Copies sent to:

Craig T. Matthews
David M. Deutsch
Jeffrey W. Van Wagner
Diane L. Feigi
Michelle L. Casper
Hon. Richard S. Skelton